IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY<br>P.O. Box 718<br>Sheboygan, WI 53082-0718, | )<br>)<br>)<br>)<br>) | CASE NO. |
| Plaintiff, | )<br>) | |
| v. | )<br>) | |
| AIY PROPERTIES, INC.,<br>2 Summit Park Drive, Unit 645<br>Independence, Ohio 44131 | )<br>)<br>)<br>) | **COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF** |
| and | )<br>) | **(Jury Demand Endorsed Hereon)** |
| TIMBER TOP APARTMENT HOLDING COMPANY, LLC<br>c/o 2112 East Ohio Service Corp., Statutory Agent<br>200 Public Square, Suite 3000<br>Cleveland, Ohio 44114 | )<br>)<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY,<br>518 East Broad Street<br>Columbus, Ohio 43215 | )<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| JDA INSURANCE AGENCY, LLC dba JACKSON DIEKEN & ASSOCIATES<br>27893 Clemens Road<br>Westlake, Ohio 44145 | )<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

Pursuant to 28 U.S.C. §§1332 and 2201 and for its Complaint for Declaratory Judgment, Plaintiff ACUITY, a Mutual Insurance Company ("Acuity") states as follows:

## ACTION, JURISDICTION, AND VENUE

1. This action is brought pursuant to 28 U.S.C. §2201, the Federal Declaratory Judgment Act, for a declaration of ACUITY's rights and responsibilities under a policy of insurance.

2. Jurisdiction is proper under 28 U.S.C. §1332(a)(1), as there is complete diversity of citizenship between Plaintiff ACUITY and all Defendants, and the amount in controversy, exclusive of interest and costs, exceeds the statutory threshold.

3. Venue is proper under 28 U.S.C. §1391(b)(2), as a judicial district in which a substantial part of the events giving rise to the claim occurred.

## PARTIES

4. Plaintiff ACUITY is a mutual insurance company headquartered in Sheboygan, Wisconsin licensed to issue policies of business property and commercial general liability ("CGL") insurance in Ohio.

5. Defendant AIY Properties, Inc. ("AIY") is an Ohio for-profit corporation headquartered in Independence, Ohio that maintains and manages residential apartment complexes under contract for various property owners.

6. Defendant Timber Top Apartment Holding Company, LLC ("Timber Top") is an Ohio limited liability company that owns a residential apartment complex in Akron, Ohio. To the best of ACUITY's ability to determine, all of Timber Top's members are residents of Ohio.

7. Defendant State Automobile Mutual Insurance Company ("State Auto") is an Ohio for-profit corporation headquartered in Columbus, Ohio that is licensed to issue policies of business property and CGL insurance in Ohio.

8. Defendant JDA Insurance Agency, LLC is an Ohio limited liability company headquartered in Westlake, Ohio that operates an independent insurance agency under the

registered tradename Jackson Dieken & Associates ("Jackson Dieken"). To the best of ACUITY's ability to determine, all of the members of Jackson Dieken are Ohio residents.

## FACTS

9. Timber Top owns an apartment complex in Akron, Ohio that is commonly known as Timber Top Apartments ("Apartments").

10. On or about April 3, 2017, Timber Top entered into a Property Management Agreement with AIY under which AIY was to manage and maintain the Apartments. An accurate copy of the Property Management Agreement is attached hereto, incorporated herein, and marked as Exhibit A.

11. AIY has no ownership interest in the Apartments.

12. The Property Management Agreement includes an indemnification provision that states, in pertinent part:

> B. Owner [Timber Top] shall indemnify and save Manager [AIY] harmless from any and all damage, claim, liability, cost, and expense (collectively, "Damages") arising out of management, operation, and maintenance of the Property or any damage or injury to any person or property arising therefrom unless the Damages are solely and directly caused by the willful misconduct or misfeasance, nonfeasance, and malfeasance of Manager or its agents or employees. The Manager shall and does hereby indemnify and hold the Owner harmless from any and all Damages arising from or related to the actions and/or omissions of the Manager and/or the Manager's employees or agents for or related to the Property.

(Ex. 1, Bates No. PMA 0004-0005).

13. The Property Management Agreement also contains an insurance provision that states, in pertinent part:

> Section 7 — Insurance
>
> A. Owner [Timber Top] agrees to maintain at its expense a policy of public liability coverage and property damage insurance with minimum coverages for the Property of One Million Dollars

>($1,000,000.00) in the event of any single injury, Two Million Dollars ($2,000,00.00) for any incident, and Two Hundred Fifty Thousand Dollars ($250,000.00) for property damage. Manager [AIY] shall be named as an additional insured on such policy, which shall contain an acknowledgement that such coverage is primary with respect to any insurance coverage maintained by Manager. At Owner's request, Manager shall arrange for and maintain such insurance coverage.

(Ex. 1, Bates No. PMA-0004).

14. AIY and Timber Top each engaged Jackson Dieken to secure separate business property and CGL insurance for themselves, and that would comply with the requirements and fulfill the intentions of the Property Management Agreement, including the Insurance provision.

15. Jackson Dieken, in turn, communicated with and coordinated with ACUITY and with State Auto, including submission of applications for insurance, responding to inquiries, and providing additional information for underwriting purposes, to secure appropriate business property and CGL insurance policies for AIY and Timber Top, respectively.

16. In obtaining the insurance policies for Timber Top and AIY, Jackson Dieken was aware of the Property Management Agreement, including the terms governing insurance, and intended to secure the coverage required by such terms.

17. On or about September 12, 2022, and in reliance upon the communications, information, and application provided by Jackson Dieken, ACUITY issued to AIY, as named insured, a policy of business property and CGL insurance, Policy No. K74913, effective for the policy period of September 12, 2022 through September 12, 2023 ("ACUITY Policy"). An accurate copy of the ACUITY Policy is attached hereto, incorporated herein, and marked as Exhibit 2.

18. The ACUITY Policy includes an industry standard Other Insurance/Excess Insurance provision that applies whenever "…any other primary insurance available to [AIY] covering

liability for damages arising out of the premises or operations, or the products and completed operations for which [AIY] has been added as an additional insured by attachment of an endorsement". (Ex. 2, Bates No. ACUITY-0092).

19. On or about April 5, 2022, in reliance upon the communications, information, and application provided by Jackson Dieken, State Auto issued to Timber Top a policy of business property and CGL insurance, Policy No. PBP2859271, effective for the policy period of April 5, 2022 through April 5, 2023 ("State Auto Policy"). An accurate copy of the State Auto Policy is attached hereto, incorporated herein, and marked as Exhibit 3.

20. The State Auto Policy includes a Liability Plus Endorsement which states, in pertinent part:

> **11. PRIMARY AND NONCONTRIBUTORY**
>
> Subparagraph **a. Primary Insurance** of Paragraph 4. Other Insurance of **Section IV – COMMERCIAL LIABILITY CONDITIONS** is amended by the following additional paragraph:
>
> However, this insurance is primary to and will not seek contribution from any other insurance available to a person or organization added as an additional insured under the terms of this Coverage Form or amendatory endorsement provided that:
>
> > **a.** The person or organization is a Named Insured under such other insurance; and
> >
> > **b.** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

(Ex. 3, Bates No. STATE AUTO-0234).

21. Based on the foregoing, the State Auto Policy, including the Liability Plus Endorsement, was issued with the intent of satisfying the provisions of the Property Management Agreement that the CGL coverage issued to Timber Top would both (a) include AIY as an

5

additional insured and (b) provide CGL coverage that, when required by contract, would be primary and non-contributory to any liability coverage issued directly to AIY.

22. This intent is also reflected in the disparate premium charge for the respective CGL coverages for the two policies, as the premium for State Auto Policy's CGL coverage is $35,483.00, but the CGL premium for the ACUITY Policy is only $1,306.00.

23. The ACUITY Policy and the State Auto Policy each have umbrella coverage provisions that would be similarly affected by the priority of coverage between the policies. The intent that the State Auto Policy should be primary and non-contributory to the ACUITY Policy is similarly reflected in the premiums for the policies' respective umbrella CGL coverages, as the premium for the State Auto Policy's umbrella CGL coverage is $10,500.00, whereas the premium for the ACUITY Policy's umbrella CGL coverage is only $1,703.00.

24. The insurance provision in the Property Management Agreement that required AIY to be added as an "additional insured" to the Timber Top CGL coverage was specifically designed to integrate with standard provisions in insurance policies and endorsements pertaining to coverage for an "additional insured", including specifically provisions such as the State Auto Liability Plus Endorsement and the ACUITY Other Insurance/Excess Insurance provision.

25. On or about October 20, 2022, during the effective dates of both the ACUITY and State Auto policies, an incident occurred at the Apartments in which multiple tenants were allegedly injured or died as a result of carbon monoxide exposure from the Apartments' heating equipment ("Incident").

26. As a result of the Incident, multiple lawsuits have been filed (and multiple additional claims have been and/or may yet be presented) seeking damages against Timber Top and/or AIY for allegedly causing the Incident, including, but not limited to: (a) *Vincent Morgan, et al. v. AIY*

6

*Properties, Inc.*, No. CV-2023-01-0327, in the Court of Common Pleas for Summit County, Ohio ("*Morgan* Action"); (b) *Scott Burgess, et al v. Timber Top Apartment Holding Co., LLC*, *et al.*, No. CV-2023-11-4201, in the Court of Common Pleas for Summit County, Ohio ("*Burgess* Action"); AND (c) *Candace Smith v. Timber Top Apartment Holding Co., LLC*, *et al.*, No. CV-2023-08-3153, in the Court of Common Pleas for Summit County, Ohio ("*Smith* Action")(collectively "Lawsuits").

27. Upon being sued in the Lawsuits, AIY tendered its defense and indemnity to both ACUITY and State Auto.

28. ACUITY, in turn, tendered the full defense of AIY to State Auto, pursuant to the terms of the Property Management Agreement and the Liability Plus Endorsement of the State Auto Policy.

29. However, notwithstanding the Liability Plus Endorsement in its policy and the intention of Timber Top and Jackson Dieken to secure CGL coverage for Timber Top that would both (a) include AIY as an additional insured and (b) be primary and non-contributory to AIY's own CGL coverage (i.e., the ACUITY Policy) when required by contract, State Auto has refused to assume the full defense of AIY on a primary and non-contributory basis.

30. State Auto asserts that it only owes defense and indemnity to AIY on a pro-rata basis, rather than a primary and non-contributory basis, because the State Auto Policy was issued naming AIY as a <u>named</u> insured, rather than an <u>additional</u> insured.

31. State Auto asserts that its Liability Plus Endorsement does not apply to AIY because the Liability Plus Endorsement only applies "to a person or organization added as an additional insured" to the State Auto Policy, and that AIY was added as a <u>named</u> insured, rather than as an <u>additional</u> insured.

7

32. ACUITY asserts that the designation of AIY as a named insured in the State Auto Policy was a drafting error, as it was plainly the intent of all parties to secure CGL coverage for Timber Top that both (a) included AIY as an additional insured, and (b) would be primary and non-contributory to any CGL coverage issued directly to AIY, where such coverage was required by contract, which the Property Management Agreement required.

33. ACUITY asserts that the naming of AIY as a named insured in the State Auto Policy was a mutual mistake that is subject to reformation.

34. Although ACUITY is not a party to the State Auto Policy, it is an intended third-party beneficiary, specifically with respect to the State Auto Policy's Liability Plus Endorsement, as it was the intent of all parties that, as required by the Property Management Agreement, Timber Tops' CGL coverage under the State Auto Policy would be primary and non-contributory to AIY's CGL coverage under the ACUITY Policy.

35. Because State Auto has declined to accept the defense and indemnity of AIY on a primary and non-contributory basis, ACUITY has been obligated to share the cost of AIY's defense in the Lawsuits on a pro-rata basis, and ACUITY may be called upon to indemnify AIY on a pro-rata basis.

36. Accordingly, a dispute has arisen and continues to exist between ACUITY and State Auto as to the intention, drafting, and interpretation of the State Auto Policy, specifically including but not necessarily limited to (a) the designation of AIY as a named insured as opposed to an additional insured, and (b) whether the Liability Plus Endorsement does or should apply to AIY, and thus whether State Auto should defend and indemnify AIY in the Lawsuits on a primary and non-contributory basis, or share such liability coverage with ACUITY on a pro-rata basis.

8

37. Further, to the extent State Auto claims to only owe CGL coverage to AIY on a pro-rata basis, a dispute also exists between ACUITY and Timber Top and Jackson Dieken with regard to their compliance with the Insurance provisions of the Property Management Agreement, expressly providing that AIY would be added to Timber Top's CGL coverage as an "additional insured", with such coverage being primary and non-contributory over ACUITY's coverage. Such provision was intended to benefit AIY and ACUITY, such that ACUITY has standing to recover damages caused by any breach thereof.

38. Based upon the foregoing, ACUITY now seeks: (a) declaratory relief with respect to, and reformation of, the State Auto Policy and the ACUITY Policy to reflect AIY as an additional insured under the State Auto Policy as set forth in the Property Management Agreement and that, with respect to AIY, the ACUITY Policy is excess to any coverage provided by the State Auto Policy; (b) alternatively, rescission of the ACUITY Policy; (c) damages from Timber Top and/or Jackson Dieken for all amounts of defense and/or indemnity ACUITY would not have had to pay for AIY had the State Auto Policy and the ACUITY Policy been properly procured by Timber Top and Jackson Dieken; and/or (d) equitable contribution and other equitable relief from State Auto to recover all amounts paid in defense and/or indemnity of AIY with respect to the claims arising from the Incident.

## COUNT I—DECLARATORY JUDGMENT AND/OR REFORMATION OF THE STATE AUTO AND/OR ACUITY POLICIES.

39. ACUITY restates and incorporates the allegations set forth in Paragraphs 1 through 38.

40. ACUITY, State Auto, AIY and Jackson Dieken are all in privity with respect to both the State Auto Policy and the ACUITY Policy.

41. At all times, Jackson Dieken acted as an agent for both Timber Top and State Auto, and also for AIY and ACUITY.

42. ACUITY, State Auto, AIY and Jackson Dieken are either contracting parties to or third-party beneficiaries of both the State Auto Policy and the ACUITY Policy. As such, they each have a cognizable legal interest in the terms of both the State Auto Policy and the ACUITY Policy with respect to priority of coverage for AIY with respect to losses like the Incident.

43. At all times, Timber Top, AIY, and Jackson Dieken were aware that the Property Management Agreement called for AIY to be listed as an "additional insured" under the State Auto Policy and that the State Auto Policy was provide primary and non-contributory coverage for losses such as the Incident and Lawsuits.

44. At all times, AIY and Jackson Dieken intended for the State Auto Policy to provide primary and non-contributory liability coverage for losses such as the Incident, and that any liability coverage under the ACUITY Policy was to be solely excess of coverage to AIY under the State Auto Policy.

45. State Auto, AIY, Timber Top, and Jackson Dieken mistakenly designated AIY as a named insured, rather than as an additional insured, under the State Auto Policy, thereby frustrating the intention of the parties under both the Property Management Agreement and the Policies.

46. By obtaining and issuing the State Auto Policy as naming AIY as a <u>named</u> insured instead of an <u>additional</u> insured, State Auto, AIY, Timber Top, and Jackson Dieken mistakenly failed to correctly follow the insurance provision of the Property Management Agreement requiring that AIY, as Manager, "shall be named as an additional insured on such policy."

47. By erroneously designating AIY as a named insured in the State Auto Policy, rather than an additional insured, State Auto, AIY, Timber Top, and Jackson Dieken mistakenly failed

to comply with the terms of the Property Management Agreement requiring that Timber Top's liability policy "shall contain an acknowledgement that such coverage is primary with respect to any insurance coverage maintained by Manager", and also unintentionally nullified the effect of the State Auto policy's Liability Plus Endorsement, which provides that the State Auto Policy is primary and non-contributory to any liability coverage issued "to a person or organization added as an additional insured" to the State Auto Policy.

48. In addition to the underwriting and premium disparities that reflect the parties' true intent, the erroneous and mistaken nature of AIY's designation as named insured in the State Auto Policy is further reflected in the fact that even the Commercial Property Coverage in the State Auto Policy is written to AIY Properties, Inc. as the named insured, even though AIY has no ownership interest or other insurable interest in the buildings and real properties insured under the State Auto Policy.

49. Alternatively, and notwithstanding such errors, the State Auto Policy nonetheless also identifies AIY as an additional insured. The State Auto Liability Plus Endorsement further provides, in pertinent part:

> **6. ADDITIONAL INSURED - MANAGER OR LESSORS OF PREMISES**
> **A. SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person(s) or organization(s) from whom you lease a building or premises when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person(s) or organization(s) is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part by some negligent act or omissions by you, your employees, your agents, or your subcontractors as a result of your occupancy, maintenance or use of that part of the premises leased to you, provided that:

11

      1. The "bodily injury", "property damage" or "personal and advertising injury" giving rise to liability occurs subsequent to the execution of the agreement; and

      2. The written agreement is in effect at the time of the "bodily injury", "property damage", "personal and advertising injury" for which coverage was sought.

However:

      1. The insurance afforded to such additional insured only applies to the extent permitted by law;

and

      2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

(Ex. 3, Bates No. STATE AUTO-0232).

50. This "Additional Insured" provision is directly applicable to the Property Management Agreement and designates AIY as an "additional insured", and is sufficient to make the State Auto Policy primary and non-contributory with respect to AIY's coverage under the ACUITY policy, even if the State Auto Policy also designates AIY as a named insured.

51. Alternatively, the "Additional Insured - Manager Or Lessors Of Premises" provision is in direct conflict with the naming of AIY as a named insured, creates an ambiguity in the State Auto Policy, and requires the State Auto Policy to be read most broadly in favor of the non-drafters, including Timber Top, AIY, and ACUITY, such that the State Auto Policy should be construed as providing primary and non-contributory CGL coverage for AIY.

52. Alternatively, ACUITY, AIY and Jackson Dieken mistakenly failed to include excess other insurance provisions in the ACUITY Policy that would render the ACUITY Policy excess to the coverage provided to AIY under the State Auto Policy.

53. The current terms of the State Auto Policy and the ACUITY Policy were either a product of mutual mistake of the parties involved or were the product of a unilateral mistake that

12

renders the State Auto Policy and the ACUITY Policy an inaccurate integration of the actual agreement and intent of the parties.

54. Based upon the foregoing, ACUITY is entitled to have the State Auto Policy reformed in order to reflect that AIY is an additional insured with respect to loss such as the Incident.

55. Alternatively, based upon the foregoing, ACUITY is entitled to have the ACUITY Policy reformed to include excess other insurance provisions that would render the ACUITY Policy excess to the coverage provided to AIY under the State Auto Policy for the Incident.

56. A genuine dispute exists as to how the ACUITY Policy and the State Auto Policy interact requiring both a judicial declaration of that interaction as well as reformation of the policies to reflect the actual intent of the parties as to their interaction.

## **COUNT II—RESCISSION OF THE ACUITY POLICY**

57. ACUITY restates and incorporates the allegations set forth in Paragraphs 1 through 56.

58. The ACUITY Policy was underwritten, priced, and purchased on the basis that it would provide excess CGL coverage to AIY for all losses and claims arising from its work under the Property Management Agreement, such as the Incident and Lawsuits.

59. To the extent that the ACUITY Policy is interpreted to provide primary or co-primary CGL coverage to AIY for such losses and claims, the ACUITY Policy does not reflect a correct integration of the agreement and intent of ACUITY and AIY.

60. Based upon the foregoing, ACUITY is entitled to rescission of the ACUITY Policy *ab initio* and AIY is then entitled to a return of the premium because the parties never reached a meeting of the minds with respect to the scope of the ACUITY Policy's CGL coverage.

## COUNT III—BREACH OF CONTRACT

61. ACUITY restates and incorporates the allegations set forth in Paragraphs 1 through 60.

62. ACUITY was an intended third-party beneficiary of the Property Management Agreement, specifically with respect to the Insurance provisions.

63. Timber Top and its agent, Jackson Dieken, failed to comply with and breached the terms of the Property Management Agreement by failing to secure CGL insurance coverage for Timber Top that added AIY as an "additional insured."

64. As a result of Timber Top and Jackson Dieken's breach of the Insurance provisions of the Property Management Agreement, ACUITY has been damaged and will continue to incur additional damages in providing pro-rata defense and possible indemnity to AIY arising out of the Lawsuits.

## COUNT IV—EQUITABLE CONTRIBUTION/UNJUST ENRICHMENT

65. ACUITY restates and incorporates the allegations set forth in Paragraphs 1 through 64.

66. Following the Incident, AIY tendered the claims and Lawsuits arising from the Incident to both ACUITY and State Auto.

67. Because of the incorrect terms of both ACUITY Policy and the State Auto Policy, State Auto and ACUITY each agreed, under reservation of rights, to defend AIY from claims for damages arising from the Incident.

68. However, ACUITY should not have any duty to defend, and should have a duty of indemnity only in excess of the State Auto Policy, because the State Auto Policy should provide

14

primary, non-contributory CGL coverage to AIY for all claims and Lawsuits arising out of the Incident.

69. State Auto received a premium for primary, non-contributory insurance while ACUITY did not. To the extent that State Auto is not required to provide primary, non-contributory CGL insurance to AIY for the Incident, it will have been unjustly enriched at ACUITY's expense.

70. Regardless whether State Auto knew about its unjust enrichment when the State Auto Policy issued, State Auto was expressly advised of the fact after the Incident but refused to accept a primary, non-contributory position, thus compelling ACUITY to participate in AIY's defense.

71. Based upon the foregoing, ACUITY is entitled to equitable contribution or other equitable reimbursement from State Auto for all amounts paid for defense and/or indemnity under the ACUITY Policy that would not have been paid had the ACUITY Policy and the State Auto Policy been properly procured.

## COUNT IV—AGENT NEGLIGENCE & INDEMNITY

72. ACUITY restates and incorporates the allegations set forth in Paragraphs 1 through 71.

73. Jackson Dieken acted as agent for AIY and for ACUITY in securing all CGL coverages for AIY.

74. As part of its duties in procuring the State Auto Policy and the ACUITY Policy, Jackson Dieken owed duties to both AIY and ACUITY to ensure that all CGL coverage for AIY was obtained in conformity with the terms of the Property Management Agreement, and that the policies providing such coverage correctly coordinated and interacted with each other to satisfy

the terms of the Property Management Agreement and complied with all application and other information provided to ACUITY for underwriting purposes.

75. Jackson Dieken breached the duties it owed to ACUITY and negligently failed to procure the Policies in a manner that conformed to the intention and requirements of the Property Management Agreement and that further conformed to the communications, information, and application provided to ACUITY for underwriting the coverage for AIY, and instead procured the Policies in a way that exposed ACUITY to coverage and liability for the Incident and Lawsuits that ACUITY would not have had if Jackson Dieken had ensured compliance with the Property Management Agreement, Jackson Dieken has damaged ACUITY and is liable to ACUITY for such amounts of defense and/or indemnity.

WHEREFORE, ACUITY demands judgment against Defendants as follows:

(a) declaratory relief with respect to, and reformation of, the State Auto Policy and the ACUITY Policy to reflect AIY as an additional insured under the State Auto Policy as set forth in the Property Management Agreement and that, with respect to AIY, the ACUITY Policy is excess to any coverage provided by the State Auto Policy;

(b) alternatively, rescission of the ACUITY Policy;

(c) equitable contribution and other equitable relief from State Auto to recover all amounts paid in defense and/or indemnity of AIY with respect to the claims arising from the Incident; and/or

(d) damages from Jackson Dieken for all amounts of defense and/or indemnity ACUITY would not have had to pay for AIY had the State Auto Policy and the ACUITY Policy been properly procured by Jackson Dieken.

ACUITY also seeks such other or further relief as may be just and proper.

>Respectfully submitted,
>
>RICHARD M. GARNER (0061434)
>Email: rgarner@cruglaw.com
>COLLINS, ROCHE, UTLEY & GARNER LLC
>655 Metro Place South, Suite 200
>Dublin, OH  43017
>PH: (614) 901-9600
>FAX: (614) 901-2723
>
>KURT D. ANDERSON (0046786)
>Email: kanderson@cruglaw.com
>COLLINS, ROCHE, UTLEY & GARNER LLC
>875 Westpoint Parkway, Suite 500
>Westlake, OH  44145
>PH: (216) 916-7730
>FAX: (216) 916-7725

## **JURY DEMAND**

Pursuant to Fed.R.Civ.Pro. 5(d) and 38, ACUITY demands a trial by jury upon all issues so triable.

>RICHARD M. GARNER (0061434)
>Email: rgarner@cruglaw.com
>COLLINS, ROCHE, UTLEY & GARNER LLC
>655 Metro Place South, Suite 200
>Dublin, OH  43017
>PH: (614) 901-9600
>FAX: (614) 901-2723
>
>KURT D. ANDERSON (0046786)

Email: kanderson@cruglaw.com
COLLINS, ROCHE, UTLEY & GARNER LLC
875 Westpoint Parkway, Suite 500
Westlake, OH  44145
PH: (216) 916-7730
FAX: (216) 916-7725